The Judges pronounced their opinions.
JUDGE TUCKER.
The bill charges that the complainant having begun a treaty with Mr. Andrews, and one Booth, for the purchase of a tract of land mortgaged by the latter to Samuel Beall, deceased, whose executor Mr. Andrews was, a conversation took place between the complainant and the defendant, from which the former discovered that the latter was desirous of purchasing the same land, and consulted the complainant on the means of effecting the purchase; that the defendant proposed to the complainant during that conversation to admit him as a partner in the purchase, which he refused; that, shortly after, meeting with the defendant again, the latter repeated his former proposition of 514 *a partnership, which he again refused; that the defendant “then promised that if the complainant would give him an interest in the purchase, he would be at all the trouble and expense of waiting on Messrs. Andrews and Booth, and, at the expiration of four or five years, *203 would let the complainant have his part again ; that, upon the complainant’s objecting to that condition that the defendant would, then, probably demand too high a price for his part, he said, he would agree to leave the price to be settled by referees; as he only wished to be paid for his improvements, and whatever rise might take place in the price of lands after the purchase: that the complainant then acceded to the defendant’s proposition, solely upon the conditions last mentioned; and it was agreed between them that the defendant might oiler as far as 4001. or 5001., with as long a credit as possible; the complainant assigning as a reason that he did not know at that time what price he might get for his wheat and tobacco:” that the defendant accordingly went down, and made the purchase, and, on his return, informed the complainant thereof, and of the terms, viz. 1001. cash to Booth, and 3001. to Mr. Andrews, in two annual payments ; that the defendant has since refused to let him have his stipulated proportion, although he has always been ready to pay his proportion of the price, and has actually tendered to the defendant 601. as a compensation for the 501. which he had advanced on the first purchase.
The defendant answered, setting forth several conversations, between the complainant and himself, on the subject, “and denying that those conversations ever terminated in a contract, or ever approached nearer to one than he had before stated.” In an amended answer which he was permitted to file, he insists upon the benefit of the statute of frauds and perjuries.
I shall briefly observe upon this answer, that the conversations which it states differ very materially from those set. forth in the bill; that no witnesses (of whom a great number were examined) were present at the time of making the contract; their testimony going only to conversations between the parties in their presence subsequent to the purchase; or to communications made to them at different times by the plaintiff, or defendant. And, although one witness, Mr. Carter, swears positively, 1‘that the defendant informed him that he and the complainant were in partnership in that purchase, and that he had made a very advantageous bargain,” 515 wyet even he does not mention the terms of the partnership, nor any particulars whatsoever relating thereto. Another witness, James Lucas, says the defendant told hold him that the complainant was to join him in the purchase of the land, or wished to do so; but he cannot recollect which of those expressions he used. Two other witnesses, William Clark-son and David Anderson, whose depositions were much relied on by the complainant’s counsel, and are, in fact, in great measure literal transcripts of each other, (a circumstance, which in my mind does not strengthen, their testimony,) state a conversation between the parties in their presence respectively, in which they both say, in the same words, that each of them “heard the complainant demand of the defendant a compliance with a contract which the complainant stated to have existed between the defendant and himself respecting a partnership in the purchase of the aforesaid tract of land, the particulars of which contract the deponent does not recollect to have heard, except so far as relates to a conversation which the complainant stated to have taken place between them to the following effect;” which they set forth, nearly, or entirely, in the same words; and in which the complainant and defendant-contradicted each other in several particulars. Neither does any thing stated by them in their depositions shew the terms of the agreement (if any can be collected, or presumed, from what they say) to be such as the complainant has set forth in his bill.
I deem it unnecessary to enter into a more minute examination of the evidence, the statute of frauds and perjuries being relied on by the defendant in his amended answer.
In giving my opinion in the case of Argenbright v. Campbell,(a) I said, that the true intent and meaning of our statute of frauds and perjuries was, according to my apprehension, to reduce all such parol agreements as are mentioned in the purview of the act to the level of a mere nudum pactum, or of a mere, colloquium, or the inception of a contract, instead of the completion of it; that although it was very clear that the statute intended to prevent fraud as well as perjury, yet, from the purview of it, declaring that no action shall be brought in the cases therein enumerated, the true intent of the statute was to prevent the fraudulent imputation of a contract, rather than the fraudulent denial of one; and, therefore, that all promises, agreements, and contracts within the purview of the statute, if not reduced to writing and signed pursuant 516 *to the statute, and if nothing were done, in performance thereof, whereby the actual state of the parties, or one of them, is materially affected, ought to be considered as imperfect and incomplete, so as to be incapable of supporting a suit either at law, or in equity. For the reasons and authorities in support of this opinion, I beg leave to refer to that case, p. 160 — 169. An opinion not very dissimilar to some parts of the preceding may be found in the case of Rowton v. Rowton,(b) delivered by another member of the Court. And, though, in that case, I was of opinion that the contract was not only fully proved, but fully executed on the part of the son, and his situation thereby materially altered, the difference of opinion between myself and a majority of the Court did not arise from a different construction of the true policy of that statute, but from the difference of opinion which was entertained respecting its application to the peculiar circumstance of that case. In the case of Cooth v. Jackson, (c) Lord Chancellor Eldon declared that, if a defendant denies that any parol agreement ever took place, a Court of Equity will not inquire into the truth of that denial. The same Judge says, in the same page, that all the doctrine of a Court of Equity attributes great weight to the *204 oath of the defendant; and that the moment the defendant, in the form in which issue is joined in that Court, in his answer says that there was no agreement, the witness cannot be heard; or, if he was heard, unless supported by special circumstances, giving his testimony greater weight than the denial by the answer, the Court could not make a decree. In the case now before us, the agreement charged in the bill is denied by the answer, and the whole mass of evidence taken together does not prove it as alleged in the bill. The statute appears to me emphatically to apply to such a case.
But it is objected, this is not a contract for the sale of lands, but for a purchase thereof in partnership. Whoever looks at it, as charged in the bill, must, I think, be sensible it was for both: the terms on which the complainant alleged he was to have the defendant’s part back again, appear to me incapable of being understood in any other sense. The contract also must, I conceive, be taken as one entire contract, and not as different bargains. The latter part being, for the reasons just mentioned, within the statute, the cases of Cooke v. Tombs, (a) and Bea v. Barber, (b) are, in my apprehension, conclusive 517 against the Chancellor’s decree. **The case of Chater v. Beckett(c) is an affirmance of the same principle. So was that of Lord Lexington v. Clarke, (d) if the note of it in the report of Chater v. Beckett be correct. I have not the book to refer to. I will here say, with Bord Kenyon, in the last-mentioned case, “that I lament extremely that exceptions were ever introduced in construing the statute of frauds: it is a very beneficial statute; and if the Courts had, at first, abided by the strict letter of the act, it would have prevented a multitude of suits that have since been brought.”
I am of opinion that the decree be reversed, and the bill dismissed.
JUDGE FLEMING.*
It is agreed by the counsel on both sides that the only two points in the cause are, 1st. Whether the case be within the statute of frauds and perjuries; and, 2dly. Whether the contract, as stated in the bill, has been proved; both of which appear to me in favour of the appellant: but I shall reverse the order, and first consider whether the contract, as stated in the bill, be proved? And I have no hesitation in saying that it is not proved to my satisfaction. It is, in the first place, expressly denied by the answer, which is corroborated in some of its material parts by oral testimony: and, in the whole cloud of witnesses examined on the part of the appellee, not one was present at the time of the pretended contract or agreement between the parties; but the whole of their testimony relates to loose confessions of the appellant, and assertions of the appellee when the matter in controversy happened to be the subject of conversation: and not a single witness pretends to have heard the appellant state or confess the substance or conditions of any agreement whatever between the parties, relative to the subject in dispute. Such evidence as this (were the statute of frauds and perjuries out of the way) is, in my mind, too slight and feeble to deprive any one of his freehold and inheritance, or any part thereof.
2dly. But, were the oral testimony of the appellee more particular and pointed in support of the contract, it appears to me, (notwithstanding the opinion of the Chancellor to the contrary,) that the case is within the statute of frauds and perjuries, which I consider as a very beneficial and sal518 utary law, that has been too *much disregarded in some of our Superior Courts of Chancery. And, although, in the case before us, it is not immediately between a buyer and seller of land, yet it is within the mischief intended to be guarded against by the statute, which being a remedial one, and intended to prevent a growing evil, ought to be liberally construed : and the admission of oral testimony to prove the agreement, denied by the appellant, tended by imputation to deprive him of a considerable part of his freehold and inheritance. But the first point being, in my apprehension, clearly against the appellee, I have considered the tatter with less attention than I otherwise should have done. And, upon the whole, I concur in the opinion that the decree be reversed, and the bill dismissed with costs.
Decree reversed, and bill dismissed.

 3 H. & M. 160.

 1 H. & M. 92.

 6 Ves. jun. 39.

 2 Anstr. 420.

 Ibid. 426, In a note.

 7 Term Rep. 201.

 2 Vent. 223.

Judge Roane did not sit in this case.